

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-427-CR

ANTONIO ZAVALA CARDENAS                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

**Introduction**

Appellant Antonio Zavala Cardenas appeals his convictions for aggravated sexual assault and indecency with a child, arguing that the trial court erred by denying his challenges for cause to various members of the jury panel following voir dire. *See* Tex. Penal Code Ann. §§ 21.11(a), 22.021(a) (Vernon Supp. 2009); Tex. Code Crim. Proc. Ann. art. 35.16(a), (c) (Vernon 2006). We reverse and remand.

## Background Facts

In May 2006, a Tarrant County grand jury indicted Cardenas for three counts of aggravated sexual assault and one count of indecency with a child. The charges involved Cardenas's sexual contact with a four-year-old girl. Before his trial, Cardenas swore that he had not been previously convicted of a felony and asked the trial court to submit his request for a probated sentence to the jury.

Cardenas's trial proceedings started with his pleas of not guilty, and then the trial court instructed an almost 100-member jury panel about voir dire and other issues. The court informed the panel that if it convicted Cardenas, it could assess punishment at a minimum of five years' confinement for the aggravated sexual assault charges and two years' confinement for the indecency with a child charge and that it could probate his sentence if he proved that he had not been previously convicted of a felony. It then told the panel that although jurors do not have to "leave [their] common sense at the courthouse steps," they must be free from prejudice or bias.

After the parties presented evidence on Cardenas's guilt and innocence and his punishment, the jury convicted him of two counts of aggravated sexual

2

assault and one count of indecency with a child,[1] and it assessed twenty years' confinement on each charge.  Cardenas filed his notice of appeal.

## The Trial Court's Denial of Cardenas's Challenges for Cause

In thirty connected issues that he has briefed together, Cardenas asserts that the trial court erred by denying his challenges for cause to thirty members of the jury panel because they indicated that they could not consider the full range of punishment for his charges.

**Standard of review**

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate the veniremember's demeanor and responses.  *Newbury v. State*, 135 S.W.3d 22, 32 (Tex.Crim.App.), *cert. denied*, 543 U.S. 990 (2004); *Tucker v. State*, 183 S.W.3d 501, 511 (Tex. App.—Fort Worth 2005, no pet.).  We reverse a trial court's ruling on a challenge for cause only upon a clear abuse of discretion.  *Newbury*, 135 S.W.3d at 32; *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995); *Tucker*, 183 S.W.3d at 511.  In determining whether the trial court abused its discretion, we review the total voir dire record in context.  *See Mathis v. State*, 67 S.W.3d 918, 924 (Tex. Crim. App. 2002); *King v. State*,

---

[1] The trial court granted Cardenas's motion for a directed verdict of not guilty on one of the aggravated sexual assault counts.

29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Emenhiser v. State*, 196 S.W.3d 915, 927 (Tex. App.—Fort Worth 2006, pet. ref'd).

**Applicable law**

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex. Code Crim. Proc. Ann. art. 35.16(a). A challenge for cause may be made by the defendant when a juror "has a bias or prejudice against any of the law applicable to the case upon which the [defendant] is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor." *Id.* art. 35.16(c)(2); *see Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998) (stating that bias against the law exists when a juror's beliefs "would prevent or substantially impair the performance of his duties"); *Garcia v. State*, 887 S.W.2d 846, 857 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1005 (1995).

The burden is on the proponent of the challenge for cause to establish that the challenge is proper. *Feldman v. State*, 71 S.W.3d 738, 747 (Tex. Crim. App. 2002). This burden is not met until the proponent has demonstrated that the panel member understood the requirements of the law and was not able to overcome his prejudice well enough to follow them. *Id.* In other words, "[b]efore a prospective juror can be excused for cause . . . the

4

law must be explained to him and he must be asked whether he can follow that law regardless of his personal views." *Id.* at 744; *Jones v. State*, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 985 (1999); *Curtis v. State*, 205 S.W.3d 656, 659 (Tex. App.—Fort Worth 2006, pet. ref'd). The defendant's right to an unbiased jury is both statutory and constitutional in nature. *See State v. Morales*, 253 S.W.3d 686, 694 (Tex. Crim. App. 2008).

A juror must be able to consider the full range of punishment for an offense, and a defendant's voir dire question about a juror's ability to do so is generally proper. *Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001); *Banda v. State*, 890 S.W.2d 42, 55 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1105 (1995); *see* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2). If a juror cannot consider an offense's full range of punishment, the juror is challengeable for cause. *Standefer*, 59 S.W.3d at 181; *see Banda*, 890 S.W.2d at 55 (explaining that a "person who testifies unequivocally that he could not consider the minimum sentence as a proper punishment for [an] offense . . . is properly the subject of a challenge for cause"); *Pierce v. State*, 696 S.W.2d 899, 902–03 (Tex. Crim. App. 1985) (holding that the trial court erroneously denied the defendant's challenge for cause when a panel member said that he could not consider granting probation in a murder case); *Von Byrd*

5

*v. State*, 569 S.W.2d 883, 891 (Tex. Crim. App. 1978), *cert. denied*, 441 U.S. 967 (1979).

**Analysis**

The State discussed range of punishment issues with the jury panel during the voir dire process. For example, the State's prosecutor extensively explained to the jury their duty to consider the full range of punishment without assuming any particular factual circumstances and regardless of their personal views by stating,

> It's a first-degree felony, a minimum of five years all the way up to 99 years or life. Remember, you don't know what the facts are yet. You know what the elements are. . . . That's why the legislature gives you a big range of punishment. You don't know what it's going to be yet. Okay? You don't know. . . .
>
>      . . . .
>
> Now, you guys have not heard any facts yet. Okay? And in the same manner that you have to keep an open mind to whatever the evidence may be and wait to make your decision as to whether or not someone is guilty, it's the same thing for punishment. You don't know what the rest of the story is. You have to wait. . . . To sit on a jury, this is what's required: At this point without having heard anything, you have to be able to keep an open mind. You have to be able to consider the full range of punishment. . . . Just say you know what, I don't know; I'm going to wait. I'm going to wait to hear what it actually is. . . . And that's the word we need from you now. And if you can't give me that word, then I need to know about it. We both need to know about it.
>
>      . . . .

6

. . . I need to make sure that you can be fair. And not having heard any evidence, just wait until you hear any evidence, so that, you know, you can decide what's appropriate. And all we're asking here is can you consider the full range of punishment. It doesn't even mean you have to give it.

. . . .

. . . You don't have to give it. You have to consider it. . . .

. . . .

. . . [Y]ou are not supposed to come into this jury box with any thoughts ahead of time as to whether or not the defendant is guilty or what the facts are. We know what the law is at this point and what he has been accused of. And you guys are going to have to say, I am going to wait to hear the evidence. Okay? I have to wait to hear the evidence.

. . . [A]t this point in time, since you haven't heard anything, you have to be able to consider the full range.

. . . .

. . . I am just telling you what the law says. It says for you to be on a jury, to sit here and to make a decision . . ., you have to be able to consider the full range. . . .[2]

Then, during part of his own voir dire examination, Cardenas's counsel

said to the jury,

---

[2] In relation to the jury's role in assessing punishment, the prosecutor had also previously said, "The jury must base their verdict on the evidence heard in the courtroom, okay? And not on your personal experience. . . . People with strong feelings are not automatically disqualified. . . . However, you can be disqualified if you have already made up your minds about this case without hearing and considering the evidence."

All right.  Aggravated sexual assault of a child.  Five to 99 years or life, up to a $10,000 fine, possibility of probation, if you decide deserving and sentence to under ten years.[3]  And we all agree that there's different punishment areas for different offenses, right?  Speeding ticket going two miles an hour over the speed limit shouldn't be fined as much as somebody going 30 miles an hour; is that a fair statement?  I'm not saying that this is equivalent to a speeding ticket.  But there are different punishments.  And there is a big range of punishments.  All right.

I want you to assume something.  I want you to assume that you are sitting on a jury, okay?  I want you to assume that you have found somebody guilty of sexual assault, aggravated sexual assault of a child.  They intentionally or knowingly caused the penetration of the sexual organ of the complaining witness, of the victim, by the means of the sexual organ or any other or with a finger or with touching genital to genital.  I want you to assume that there is no reasonable doubt, that you believe beyond a reasonable doubt that the  person is guilty.  Okay?  I want you to assume that it's a unanimous decision amongst the 12 of you, that all of you believe beyond a reasonable doubt that the person is guilty.  Not consensual; it was an intentional and knowing assault.[4]

---

[3] This was the correct punishment range for aggravated sexual assault under the facts of this case at the time of Cardenas's alleged criminal act in 2005.  *See* Tex. Penal Code Ann. §§ 12.32, 22.021(e) (Vernon Supp. 2009).  For offenses committed on or after September 1, 2007, the minimum term of confinement for aggravated sexual assault of a child younger than six years old is twenty-five years.  Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.18, 2007 Tex. Gen. Laws 1120, 1128 (current version at Tex. Penal Code Ann. § 22.021(f)).  Also, for offenses committed on or after September 1, 2007, a jury may not recommend probation in an aggravated sexual assault case when the victim is younger than fourteen years old.  Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.06, 2007 Tex. Gen. Laws 1120, 1123 (current version at Tex. Code Crim. Proc. Ann. art. 42.12 § (4)(d)(5) (Vernon Supp. 2009)).

[4] Cardenas's counsel tracked the language of the statute in his question for aggravated sexual assault regarding the defendant's intentional or knowing state of mind.  *See* Tex. Penal Code Ann. § 22.021(a)(1)(B).

Intentional and knowing basically means wanting to do it; he meant to do it. This is the question: Could you honestly ever fairly consider on an aggravated sexual assault of a child as little as five years in prison and give probation as an appropriate punishment[?]

Fifty-two members of the jury panel answered the question negatively. Nobody asked those jurors to clarify or reweigh their negative answers to the question.

After voir dire concluded, as the trial court asked whether the parties had challenges for cause to each remaining potential juror, the following exchange occurred:

THE COURT: [Panel member] No. 6?

[DEFENSE COUNSEL]: Range of punishment.

[STATE]: Judge, we would object to that. Counsel asked the wrong question, is the bottom line. And frankly, to make it easier, I assume he will challenge for cause numerous other jurors. There's some that we would agree to, but for the most part, he asked the wrong question, and that's the bottom line. His question very specifically was, "Can you honestly ever fairly consider as little as five years in prison and give probation as an appropriate punishment," and that's not what the law provides. And frankly, I think this court has been present in other jury selections where Defense counsel asked the wrong question. And the real question that is supported by case law is if the facts justify it and the law allows it, can you consider it. And counsel very specifically asked him to entertain a hypothetical and to imagine factual circumstances where they could give that, and that's inappropriate. It's the wrong question. And we would agree to [some challenges, but] [e]veryone else challenged under that question, we would object to.

9

Cardenas's thirty issues relate to the thirty jury panel members whom he similarly challenged under "range of punishment" and whom the trial court did not release from the jury list by either granting that challenge or otherwise excusing the jurors through the State's agreement or on other challengeable grounds. Those panel members' negative responses to Cardenas's question show that they could not follow the law by considering the minimum punishment and that they were therefore challengeable for cause. *See Standefer*, 59 S.W.3d at 181; *Banda*, 890 S.W.2d at 55; *see also Faulder v. State*, 745 S.W.2d 327, 339 (Tex. Crim. App. 1987) (explaining that it is "axiomatic that a prospective juror who states that he cannot consider [the full range of punishment] is subject to challenge for cause") (citation omitted); *Von Byrd*, 569 S.W.2d at 891 (stating that it is "well established that the [defendant] has a right to challenge for cause any juror who could not give the minimum punishment").

However, in its first response to Cardenas's issue, the State argues that he did not preserve error. To preserve error on his challenges for cause, Cardenas had to (1) assert a clear and specific challenge for cause, (2) use a peremptory challenge on the complained-of veniremember, (3) exhaust all of his peremptory challenges, (4) request and be denied additional peremptory challenges, and (5) be forced to accept an objectionable juror on the jury.

10

*Feldman*, 71 S.W.3d at 744; *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997). Cardenas did all of these things; the State has not argued otherwise.

Nonetheless, the State argues that Cardenas still did not preserve error because he did not ensure that the jury panel understood the law's requirements and could not overcome their prejudice well enough to follow them. But leading up to his question, as indicated above, Cardenas's counsel did explain the law on punishment to the panel. And, as the State argues, although Cardenas's counsel did not follow up with additional questions to the jurors individually about overcoming their respective prejudices after they unequivocally indicated that they could not consider giving a person convicted of aggravated sexual assault of a child the minimum statutory punishment, including probation, we hold that under the limited circumstances of this case, such a follow-up question was not required. The jury had previously been repeatedly informed by the trial court and the State that a jury must act without prejudice and that the law commands that they consider the minimum punishment regardless of their personal views, and in that context, the panel

11

members' answers to the question at issue demonstrated that they could not do so.[5]

Secondly, the State asserts that the trial court did not abuse its discretion by denying Cardenas's challenges because his counsel's question sought an improper commitment from the panel members. The State contends that the question failed the first and third parts of the test for valid commitment questions as set forth in *Standefer.*

The determination of whether a question is a proper commitment question is a three-part test: (1) is the question a commitment question; (2) could a possible answer to the question produce a valid challenge for cause because it would show that a juror would not follow the law; and (3) does the question only contain the facts required to make such a challenge. *See Tijerina v. State*, 202 S.W.3d 299, 302 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g). A question is a commitment question—although not necessarily an *improper* commitment question—when it commits a prospective juror to resolve, or refrain from resolving, an issue in a certain way after learning a particular fact.

---

[5] At oral argument, the State relied on the court of criminal appeals's *Jones* decision to propose that Cardenas's counsel was required to follow up with each of the panel members who answered his question negatively. However, we cannot find any language in the *Jones* opinion that requires further questioning under the circumstances at issue here. *See Jones*, 982 S.W.2d at 388–90.

*See Standefer*, 59 S.W.3d at 179–80; *Lydia v. State*, 117 S.W.3d 902, 905 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on remand). Counsel may ask prospective jurors whether they can follow the law when it requires a certain type of commitment from jurors and when the question states only the facts required to establish a challenge for cause; however, when "the law does not require the commitment, a commitment question is invariably improper." *Standefer*, 59 S.W.3d at 181; *see Lydia*, 117 S.W.3d at 905.

As we have explained, the law requires potential jurors to consider the full range of punishment; thus, although Cardenas's counsel's question connected hypothetical facts (the jury's finding of guilt for aggravated sexual assault of a child) to the resolution of a legal issue (consideration of the minimum punishment), the question was not improper on the first part of the commitment question test. *See Standefer*, 59 S.W.3d at 181 (stating that "questions concerning a juror's ability to consider the full range of punishment for a particular offense meet the . . . definition of commitment questions but are nevertheless proper"); *Rivera v. State*, 82 S.W.3d 64, 66 n.2 (Tex. App.—San Antonio 2002, pet. ref'd).

The State has also argued on the final page of its brief and during oral argument that the question fails the third part of the *Standefer* test—which requires the question to include only the facts necessary for a challenge for

13

cause—because it allegedly "contained the approximate age of the victim, the type of assault, and the manner and means of the actual assault."[6] But the State has not explained how the lead-in to Cardenas's counsel's question[7] about the offense's alleged "manner and means" (presumably the part of the question that hypothesized that the jury had found someone guilty of penetrating the sexual organ of the complaining witness "by the means of the sexual organ or any other or with a finger or with touching genital to genital") affected the veniremembers' responsibility in this particular case to consider the entire range of punishment for the offenses. The alleged "manner and means" described by Cardenas's counsel directly corresponds with the indictment's allegations. *See Barajas v. State*, 93 S.W.3d 36, 38 n.1 (Tex. Crim. App. 2002) (stating that under *Standefer*, "parties may not ask whether venire members can consider probation under the particular facts of the case beyond the offense as charged in the indictment").

Also, the State's indictment *did not* aver that Cardenas's alleged contact with the victim's sexual organ with either his finger or with his own sexual

---

[6] The question quoted above does not state the age of the victim beyond the question's language that the charge involved a child.

[7] The question was asked by Cardenas's counsel and answered by the panel members without any objection by the State regarding an allegation that it required an improper commitment or was improper on any other basis.

14

organ were different *manners and means* of committing one offense at all; rather, the State alleged that Cardenas's alleged contact with the victim in these ways comprised *independent offenses* for which the State sought separate convictions. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(1)(B)(iii) (stating that a person commits aggravated sexual assault of a child if the person "causes the penetration of the anus or sexual organ of a child by any means" *or if the person* "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor"); *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that the various methods of contact described by section 22.021(a)(1)(B) comprise "distinct statutory offense[s]" for which multiple convictions may be obtained); *McGlothlin v. State*, 260 S.W.3d 124, 126–29 (Tex. App.—Fort Worth 2008, pet. ref'd). Thus, Cardenas's counsel's question can be read as properly asking the jury whether they could consider the minimum punishment upon conviction of two of the *specific crimes* (beyond generally referencing aggravated sexual assault of a child)—not the specific *manners and means* of those crimes—that were contained in the indictment. In other words, the question did not give unnecessary, additional details about Cardenas's charges; the question simply described the core elements of the charges. Therefore, we hold that under the facts of this case, the specification of the methods of

15

sexual contact in Cardenas's counsel's question did not negate the potency of the question to establish that the veniremembers could not follow the law on punishment and were therefore challengeable for cause.[8]

For all of these reasons, we hold that the trial court abused its discretion by denying Cardenas's challenges for cause to jurors who unequivocally stated that they could not consider the full range of punishment for Cardenas's charges. *See Newbury*, 135 S.W.3d at 32; *Standefer*, 59 S.W.3d at 181; *Banda*, 890 S.W.2d at 55. Specifically, we sustain Cardenas's second issue, regarding the denial of his challenge for cause to juror number 28. Cardenas was harmed because of the denial as to juror number 28 because he (1) used a peremptory strike to remove juror number 28, (2) exhausted his peremptory strikes, (3) requested and was denied additional peremptory strikes, and (4) identified three specific objectionable veniremembers who sat on the jury and on whom he would have exercised peremptory strikes.[9] *See Johnson v. State*, 43 S.W.3d 1, 7 (Tex. Crim. App. 2001) (holding that harm for a denial

---

[8] We note that the State's prosecutor also discussed particular methods of sexual contact during his questioning on the range of punishment for Cardenas's offenses.

[9] Specifically, Cardenas asserted that he would have struck three panel members who served on the jury because a mother of one of the jurors was a child abuse victim, another juror is an elementary school teacher, and the third juror is a nurse and has "experience in different things that makes her undesirable."

16

of a challenge to cause, which is based under the nonconstitutional error standard of rule of appellate procedure 44.2(b), requires these four elements); *see also Busby v. State*, 253 S.W.3d 661, 670 (Tex. Crim. App.), *cert. denied*, 129 S. Ct. 625 (2008).  Because we sustain his second issue, we decline to specifically address his other twenty-nine issues.  *See* Tex. R. App. P. 47.1.

## Conclusion

Having sustained Cardenas's second issue, we reverse the trial court's judgment convicting Cardenas of counts one, two, and four of the State's indictment, and we remand this case to the trial court for a new trial to decide his guilt and his punishment on those three counts.  *See* Tex. Code Crim. Proc. Ann. art. 44.29(a) (Vernon Supp. 2009); *Johnson*, 43 S.W.3d at 7; *Carson v. State*, 6 S.W.3d 536, 539 (Tex. Crim. App. 1999).


TERRIE LIVINGSTON
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

CAYCE, C.J. dissents without opinion.

PUBLISH

DELIVERED:  November 25, 2009

17